## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| NATALIA ILIN, an individual, <br><br> Plaintiff, <br><br> v. <br><br> EB5 FINANCING MANAGEMENT COMPANY, LLC, a Florida limited liability company, and RIVIERA POINT HOLDINGS, LTD., a Florida limited partnership, <br><br> Defendants. | **JURY TRIAL DEMANDED** <br><br> Case No. 0:22-cv-61211_____ |

## COMPLAINT

Plaintiff Natalia Ilin ("Plaintiff"),[1] by and through undersigned counsel, files this Complaint seeking damages and sues Defendants EB5 Financing Management Company, LLC ("EB5 FMC") and Riviera Point Holdings, Ltd. ("Riviera" or the "Riviera Partnership"), (collectively the "Defendants") and alleges as follows:

## INTRODUCTION

1. This action concerns the unlawful use and fraudulent transfer of Plaintiff's funds by Defendants to Plaintiff's former spouse, a co-signatory on the subscription agreement, in violation of a properly recorded lis pendens recorded by the court.

---

[1] Plaintiff has officially changed her last name to "Ilin" when she received her citizenship. The Plaintiff's name is also spelled as "Natalia Iliina" or "Natalia Ilyina" on some of the documents.

1

2. Plaintiff made an investment of $500,000, plus an additional $50,000 in various fees, in exchange for a limited interest in the Riviera Partnership. The investment was made as community property and was held in the Defendants' escrow account.

3. Eight years later, despite having knowledge of both the lis pendens and the couple's divorce, Defendants sold Plaintiff's interest in the Riviera Partnership at a heavily discounted price of $198,356.58. Defendants transferred all of the proceeds solely to Plaintiff's ex-spouse and left Plaintiff with nothing.

## PARTIES AND RELEVANT NON-PARTIES

### Plaintiff

4. Natalia Ilin is a citizen of the United States and resides in Harris County, Texas. Natalia Ilina is over 18 years of age and is otherwise *sui juris*.

### Defendants

5. Defendant Riviera is a Florida limited partnership with its principal place of business at 2750 SW 145th Avenue, Suite 401, Miramar, Florida 33027.

6. Defendant EB5 FMC is a Florida limited liability company with its principal place of business at 2750 SW 145th Avenue, Suite 401, Miramar, Florida 33027. Defendant EB5 FMC is the managing general partner of Riviera.

7. There exists, and there existed a unity of interest between the Defendants such that any individuality and separateness between them have ceased, and the Defendants are the alter egos of one another and vice versa.

### Non-Parties

8. Anton Ilin ("Anton") is the former husband of Plaintiff and currently resides in Russia.

9. Olga Bozhenova ("Bozhenova") is the mother of Plaintiff who loaned Plaintiff and Anton the funds that were later secured by a chattel mortgage on Anton and Plaintiff's partnership interest in Riviera. Bozhenova filed a complaint against Anton for money lent due and owing and breach of the Security Agreement, and the court recorded a lis pendens.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (a)(1), as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. The Court has personal jurisdiction over each of the Defendants because each Defendant is a corporation conducting business and maintaining operations in this district.

12. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida, Broward County. Defendants maintain executive offices in this district and have received substantial compensation in this district by engaging in numerous activities that have had an effect on this district.

13. Plaintiff has retained the undersigned counsel to represent her in this action and has agreed and is obligated to pay a reasonable fee for their services.

## FACTUAL ALLEGATIONS

14. At times relevant to this proceeding, the EB-5 Immigrant Investor Program offered foreign nationals the prospect of permanent residence for themselves and their family members in exchange for a $1 million investment in a new business that created or preserved at least ten direct jobs, or a $500,000 investment in a targeted employment area in a rural area or one with high

unemployment. Under the 2022 re-authorization of the program, the minimum investment requirement was raised to $800,000.

15. Under the EB-5 Immigrant Investor Program, foreign investors who invest capital in a "commercial enterprise" in the United States may petition the USCIS using Form I-526 (called an "I-526 Petition") and receive conditional permanent residency status for a two-year period. USCIS defines a "commercial enterprise" as any for-profit activity formed for the ongoing conduct of lawful business.

16. The EB-5 Immigrant Investor Program requires a showing that the foreign investor has placed the required amount of capital at risk for "the purpose of generating a return" on the capital placed at risk. The foreign investor must invest at least $500,000 in a "Targeted Employment Area" and thereby create at least ten full-time jobs for United States workers. If the foreign investor satisfies these and other conditions within the two-year period, the foreign investor may apply to have the conditions removed from his or her visa and live and work in the United States permanently.

17. Plaintiff, with her husband Anton, invested $500,000 (the "Capital Contribution"), plus a syndication fee of $30,000 and an administrative fee of $20,000 for a total of $550,000 in exchange for a limited partner interest in the Riviera Partnership. Anton was listed as the applicant for the EB-5 Immigrant Investor Program.

18. Riviera is a commercial enterprise located in a targeted employment area that qualified under the requirements of the EB-5 Immigrant Investor Program. Riviera was formed on October 1, 2010, to "provide funding for the acquisition, development, and improvement of real property located in Broward County, Florida." Said property was comprised of leasable office buildings located at 7951 and 7971 Riviera Blvd., Miramar, Florida 33023 (the "Property").

19. To invest in the Riviera Partnership, Plaintiff and her then-husband Anton entered into the Subscription Agreement with Defendant Riviera on June 18th, 2013. The Subscription Agreement is annexed hereto as *Exhibit "1."*

20. Plaintiff and Anton executed the Subscription Agreement as "Husband and Wife," taking the title in the Riviera Partnership interest as community property. Both Plaintiff and Anton Ilin signed the signature page, confirming that that interest was to be held in both names. *See Exhibit "1,"* at p. 14.

> **IN WITNESS WHEREOF,** the undersigned has executed this Subscription Agreement on the date set forth on the signature page, and desires to take title in the Partnership Interests (check one):
>
> ____ a.   Individual (one signature required on the Signature Page); or
>
> ✓ b.   Husband and Wife, as community property (one [1] signature required on the Signature Page if interest held in one [1] name, *i.e.*, managing spouse; two [2] signatures required on the signature Page if interest held in both names).
>
> If subscriber is an individual or husband and wife:
>
> Signature: X [signature]
>
> Signature of Spouse: X [signature]
>
> SUBSCRIPTION ACCEPTED this 18TH day of June, 2010.
>
> Riviera Point Holdings, Ltd.
> a Florida limited partnership
>
> By: EB5 Financing Management Company, LLC, a Florida limited liability company
>
> Its: Managing General Partner
>
> By: [signature]
> Rodrigo Azpurua, President

21. On June 19, 2013, Strock & Cohen, Zipper, Ferrer Law Group P.A., the escrow agent of Riviera, received the funds in the amount of $550,000 in its account, No. 856944343 (the "Escrow Account") at JPMorgan Chase. *See Exhibit "2,"* annexed hereto.

22. The confirmation of the wire transfer from Natalia Ilina to the Escrow Account lists "Natalia Iliina" under the originator's name with a note, "Investment from Anton Ilin." *See* **Exhibit "3"** (containing a copy of the wire transfer confirmation), annexed hereto.

23. On or about December 11, 2014, Natalia Ilin and Anton, as debtors, executed and delivered a promissory note to Bozhenova (the "Note"), wherein they promised to pay Bozhenova the sum of $675,725.00. *See* **Exhibit "4"** (containing a copy of said note), annexed hereto.

24. On July 8, 2017, Plaintiff and Anton, as debtors, and Bozhenova as a secured party, executed a security agreement to secure the amount due under the Note. Plaintiff and Anton granted Bozhenova a chattel mortgage on their partnership interest in Riviera (the "Security Agreement"). *See* **Exhibit "5,"** annexed hereto.

25. On May 4, 2018, Plaintiff's marriage with Anton was terminated based on the court divorce decree dated March 12, 2018, entered in Russia. *See* **Exhibit "6"** (containing a copy of the Divorce Certificate), annexed hereto.

26. In 2018, Riviera notified its limited partners of its decision to liquidate the Riviera partnership and sell the property in January 2019.

27. On September 3, 2018, Bozhenova filed a complaint against Anton for money lent, due, and owing and breach of the Security Agreement. *See* Complaint, *Bozhenova v. Ilin*, Docket No. 2018-029942-CA-01 (Fla. Cir. Ct. Sep 03, 2018), annexed hereto as **Exhibit "7."**.

28. On February 11, 2019, Anton contacted Carlos Pulido, the Investors Relations Manager of Riviera, saying that he was looking for an investor who would buy his entire interest in the Riviera Partnership. In his email, Anton mentioned that Section 11.03 of the Limited Partnership Agreement required him to get approval in writing from the Managing General Partner.

29.     In March 2019, Bozhenova's counsel notified Riviera of the pending lawsuit against Anton and the efforts by the parties to settle the dispute.

30.     On March 6, 2019, Bozhenova's counsel Richard Skeen ("Skeen") of the Skeen Law Group, P.A., contacted Riviera confirming the terms of the settlement agreement between Bozhenova and Anton:

- Anton Ilin will assign all of his right title and interest in his share of Riviera Point Holdings Limited to Olga Bozhenova
- Riviera Point Holdings Limited shall approve the transfer.
- Olga Bozhenova will execute the Riviera Point Holdings Limited Partnership Agreement and other documents required by the company to transfer ownership to her.
- Both parties will execute a general release canceling all claims for moneys owed.
- Olga Bozhenova and Anton Ilin will jointly file a settlement agreement resolving all claims in the Court Case (2018-029942-CA-01).
- The foregoing is subject to Riviera Point Holdings Limited's consent to and actual transfer of the partnership interest on the company's books, per Article XI of the Partnership Agreement.

See *Exhibit "8,"* annexed hereto.

31.     On March 14, 2019, Skeen sent proposed settlement documents to Carlos Pulido at Riviera and Riviera's counsel, Julian F. Montero of Saul Ewing Arnstein & Lehr, LLP. See *Exhibit "9,"* annexed hereto. However, the parties did not reach an agreement at that time as Anton ceased responding to communications and could not be reached.

32.     On April 12, 2019, Bozhenova moved to impose a constructive trust upon Anton's interest in the Property and all proceeds thereof. On April 16, 2019, Bozhenova filed a notice of lis pendens on the Property (the "Notice"). See *Exhibit "10"* (containing a copy of said Notice), annexed hereto. The Notice described the personal property in accordance with Section 48.23, Florida Statutes as $550,000 invested with Riviera, "which said funds have been pledged as security to the plaintiff and are further claimed as marital proceeds by Natalia Iliina."

33. The same day, on April 12, 2019, Riviera's counsel, Paul L. Zelnick of Saul Ewing Arnstein & Lehr, LLP, confirmed in his email to Plaintiff's counsel Michael Kaufman: "Ronnie [Ronald R. Fieldstone] and I are in receipt of the recorded Lis Pendens and can confirm that no funds will be distributed to Anton Ilin absent further court order." *See* **Exhibit "11,"** annexed hereto.

34. On April 24, 2019, Pulido in his email to Anton confirmed that Riviera received the lis pendens notice. *See* **Exhibit "12"** annexed hereto.

35. Pulido continued informing Anton about the conversion process of the office buildings into condominiums that was expected to be completed in 2019. During the year 2020, Pulido regularly communicated with Anton regarding Riviera's efforts to sell the Property.

36. On November 23, 2020, Riviera accepted the offer of $8,600,000 for the Property from HSD Holdings, Inc., of which it notified Anton in December 2020.

37. On March 18, 2021, Riviera sent Anton the Notice to Investor to confirm his consent to sell the interest in Riviera Partnership in exchange for the "Per Limited Partner Distribution Amount" that was calculated at $198,356.58. *See* **Exhibit "13,"** annexed hereto.

38. Plaintiff, who made the EB-5 investment with her then-spouse as community property and was a co-signer on the Subscription Agreement, never received any correspondence related to the disposition of the asset.

39. On March 19, 2021, Anton alone consented to the sale of the interest in the Property as Limited Partner, and on March 26, 2021, Riviera mailed him a check for $198,356.58. *See* **Exhibit "14,"** annexed hereto.

40. In September 2021, after Bozhenova subpoenaed Riviera for records related to the payments made to Anton, Plaintiff discovered that the money was paid to Anton for his and Plaintiff's entire shared interest in the partnership.

41. Riviera had the knowledge that:

   (i) the investment was made by a married couple as community property;
   (ii) the marriage was since then dissolved;
   (iii) the investment was a collateral pledged by Anton to secure the loan from Bozhenova;
   (iv) Bozhenova duly recorded a lis pendens against Anton's interest in the Property; and
   (v) there is a legal action pending against Anton for breach of the Security Agreement with Bozhenova.

42. Despite having that knowledge and in flagrant disregard of the duly recorded lis pendens on the $550,000 investment, Riviera paid $198,356.58 directly and exclusively to Anton.

43. Plaintiff was not a party to the transaction between the Riviera Partnership and HSD Holdings, Inc.

44. Plaintiff never received, reviewed, or consented to the terms of the transaction between the Riviera Partnership and HSD Holdings, Inc.

45. Plaintiff received no economic benefit from the sale transaction between the partnership and HSD Holdings, Inc. or any other distribution made by Defendants to Anton.

46. Plaintiff now comes to this Court, with clean hands, seeking assistance in her pursuit of redress, justice, and enforcement of her rights against the entities that received the invested funds; benefited from these funds; and/or actively conspired with, or aided and abetted, Anton in the distribution of these funds to himself.

///////////////

## CLAIMS FOR RELIEF
## COUNT I – NEGLIGENCE

47. Plaintiff adopts and realleges the allegations set forth in Paragraphs 1 through 46 as if fully stated fully herein.

48. To the extent permitted by law, this cause of action is pleaded in the alternative.

49. Defendants had a duty to Plaintiff to provide her with information regarding the status of her investment that did not contain materially misleading statements or omissions.

50. Defendants had a duty to Plaintiff not to assist her ex-spouse in his efforts to liquidate her community property asset without her consent at a heavily discounted price.

51. Defendants failed to use reasonable care that a reasonably careful investment company and general partner in a partnership would use under like circumstances.

52. Defendants failed in their duties to which Plaintiff was a reasonable and intended beneficiary.

53. All of the aforementioned breaches of duties by Defendants are actual and proximate causes of Plaintiff's injuries.

WHEREFORE, Plaintiff hereby demands judgment against Defendants for the total amount of at least $550,000, plus interest and costs, together with such other and further relief as the Court deems just and proper.

## COUNT II – BREACH OF FIDUCIARY DUTY

54. Plaintiff adopts and realleges the allegations set forth in Paragraphs 1 through 53 as if fully stated fully herein.

55. To the extent permitted by law, this cause of action is pleaded in the alternative.

56. Plaintiff reposed her trust and confidence in Defendants, which they accepted. Plaintiff was dependent on Defendants' purported expertise in the United States EB-5 program, and Defendants knowingly undertook and accepted the duty to advise, counsel, and protect Plaintiff.

57. Under Section 620.1408, Florida Statutes, Defendants owed Plaintiff fiduciary duties of loyalty and care, and the duty to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law. These duties arose out of Defendants' relationship of trust and confidence with Plaintiff and due to their status as general partners of Riviera, of which Plaintiff was a limited partner.

58. Defendants breached their fiduciary duties by:

   (i)   failing to notify Plaintiff about the sale of the Property;
   (ii)  selling Plaintiff's share in the Riviera Partnership with a loss of over 60% of the value of Plaintiff's initial investment;
   (iii) allowing Plaintiff's funds to be transferred to her former spouse, in derogation of the representations that the funds would be held in escrow pending lifting of the lis pendens on the Property.

59. As a direct and proximate result of the Defendants' breach of their duties to Plaintiff, Plaintiff has suffered damages.

60. Furthermore, the specific misconduct that gives rise to this claim for breach of fiduciary duties was intentional and/or so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of Plaintiff, and, therefore, an award of punitive damages is appropriate.

WHEREFORE, Plaintiff prays for entry of judgment in her favor and against Defendants, awarding compensatory damages of no less than $550,000 and punitive damages, along with pre-judgment and post-judgment interest and costs and such other and further relief the Court deems just and equitable.

## **COUNT III – CONSTRUCTIVE FRAUD**

61. Plaintiff realleges and incorporates Paragraphs 1 through 60 above as if fully set forth herein.

62. To the extent permitted by law, this cause of action is pleaded in the alternative.

63. A duty to Plaintiff under a confidential or fiduciary relationship has been abused.

64. An unconscionable or improper advantage has been taken of Plaintiff.

65. Defendants solicited, benefited from, and accepted the protective and advisory role as to the Plaintiff's investment in the EB-5 program.

66. Plaintiff reposed trust and confidence in Defendants, who undertook such trust and assumed a duty to protect the Plaintiff's investments.

67. Defendants took advantage of their position of trust to benefit themselves by:

    (i) failing to notify Plaintiff about the sale of the Property;
    (ii) selling Plaintiff's share in the Riviera Partnership with a loss of over 60% of the value of Plaintiff's initial investment;
    (iii) allowing Plaintiff's funds to be transferred to her former spouse, in derogation of the representations that the funds would be held in escrow pending lifting of the lis pendens on the Property.

68. Plaintiff relied upon the Defendants' knowingly false statements and omissions and has been damaged as a result.

69. As a direct and proximate result of the Defendants' taking advantage of their position of trust to benefit themselves, Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for entry of judgment in her favor and against Defendants, awarding compensatory damages of at least $550,000 and punitive damages, along with pre-judgment and post-judgment interest and costs and such other and further relief the Court deems just, proper and equitable.

////////////

## COUNT IV - CIVIL CONSPIRACY

70. Plaintiff realleges and incorporates Paragraphs 1 through 69 above as if fully set forth herein.

71. To the extent permitted by law, this cause of action is pleaded in the alternative.

72. Defendants are parties to a conspiracy.

73. There was an agreement between Defendants and Anton to do an unlawful act or to do a lawful act by unlawful means, there were overt acts in furtherance of the conspiracy, and Plaintiff was damaged as a result of acts done under the conspiracy.

74. As described above, the basis of the conspiracy is a fraud and theft of approximately $550,000 of Plaintiff's money, which are independent torts that give rise to causes of action if committed by one person.

75. Defendants entered into a conspiracy and acted in concert to sell Plaintiff's share in the Riviera Partnership and distribute and dissipate the money among themselves and Anton.

76. Defendants acted with the full knowledge and awareness that (i) the investment was made by a married couple as community property, (ii) the marriage was since then dissolved, (iii) the investment was made with money loaned from Bozhenova who recorded a lis pendens against Anton's interest in the Property, and (vi) there is a legal action pending against Anton for breach of the Security Agreement.

77. Defendants acted contrary to law, acted according to a predetermined and commonly understood plan of action for the purpose of obtaining Plaintiff's funds, and took overt acts in furtherance of the conspiracy by, among other things, committing these acts:

    1)    defrauding Plaintiff;
    2)    defrauding Bozhenova;
    3)    breaching fiduciary duties owed to Plaintiff; and
    4)    converting Plaintiff's funds for their benefit.

78. There was a meeting of minds between and among Defendants to commit the unlawful acts alleged herein.

79. As a result of the Defendants' participation in a civil conspiracy, Plaintiff has suffered damages. The specific misconduct that gives rise to this claim for civil conspiracy was intentional and/or so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the investors, and, therefore, an award of punitive damages is appropriate.

WHEREFORE, Plaintiff prays for entry of judgment against Defendants, jointly and severally, awarding compensatory damages of at least $550,000 and punitive damages, along with pre-judgment and post-judgment interest and costs and such other and further relief the Court deems just, proper and equitable.

## COUNT V – UNJUST ENRICHMENT

80. Plaintiff realleges and incorporates Paragraphs 1 through 79 above as if fully set forth herein.

81. To the extent permitted by law, this cause of action is pleaded in the alternative.

82. As a result of the Defendants' unlawful actions, Plaintiff has conferred a benefit on Defendants in the form of the Plaintiff's asset that Defendants disposed of without Plaintiff's consent.

83. Defendants were aware of the benefits conferred on them by Plaintiff and have been unjustly enriched by the benefits.

84. Defendants voluntarily accepted and retained the benefits conferred on them.

85. The circumstances are such that it would be inequitable for Defendants to retain the benefits obtained by them as a result of the actions of Defendants.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendants for the value of the benefits wrongfully obtained by Defendants, awarding and imposing upon Defendants a constructive trust upon the proceeds of the wrongful and/or illegal activities, imposing equitable relief requiring Defendants to turn over the assets obtained using the funds unlawfully taken from Plaintiff, and granting such other and further relief as the Court deems just and proper.

## COUNT VI – EQUITABLE ACCOUNTING

86. Plaintiff realleges and incorporates Paragraphs 1 through 85 above as if fully set forth herein.

87. The relationship between Plaintiff, Defendants, and Anton involves extensive and complicated accounts and transfers of funds between accounts held by various entities.

88. Since Plaintiff's investment in the Riviera Partnership, Defendants made distributions to Anton.

89. Accounting is necessary to determine the financial condition and transactions of the Riviera Partnership and Defendants.

WHEREFORE, Plaintiff demands judgment against Defendants for an accounting, and such other relief as the Court deems to be appropriate and just.

## COUNT VII - EQUITABLE TOLLING

90. Plaintiff realleges and incorporates Paragraphs 1 through 89 above as if fully set forth herein.

91. The true extent of the unlawful use and fraudulent transfers of the invested funds at issue cannot be ascertained until there is a forensic accounting investigation into the financial dealings of Defendants.

92. Any statute of limitations that may be applicable to any of the counts outlined in this Complaint has been equitably tolled by the wrongful and fraudulent actions committed against Plaintiff.

93. Equity and the interest of justice dictate that Plaintiff should be excused from the applicable limitation period.

94. Plaintiff is entitled to relief from the harsh results of the Defendants' wrongful actions. Such relief would not prejudice the Defendants in any manner.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests a judgment in her favor and against Defendants (a) in an amount no less than $550,000, (b) statutory interest under the applicable rates under Florida law, (c) punitive damages of at least $1,650,000 as permitted under Florida law given the Defendants' intentional conduct, (d) attorney's fees and costs and (e) any other relief that this Court deems just and equitable.

Dated: June 25, 2022

Respectfully Submitted,

LAW OFFICES OF ROBERT V. CORNISH, JR., PC
/s/ *Tatiana Baranova*
**TATIANA BARANOVA**
Florida Bar No. 1030880
Email: tbaranova@rcornishlaw.com
1395 Brickell Avenue, Suite 800
Miami, FL 33131
Tel: (305) 735-3450/Fax: (571) 290-6052

*Attorney for Plaintiff*

17